O

# United States District Court
# Central District of California

| | |
|---|---|
| VISHAV PRATAP SINGH,<br><br>             Petitioner,<br><br>      v.<br><br>KRISTI NOEM et al.,<br><br>             Respondents. | Case № 2:26-cv-01738-ODW (DSRx)<br><br>**ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [3]** |

## I. INTRODUCTION

Petitioner Vishav Pratap Singh moves *ex parte* for a temporary restraining order requiring his immediate release from custody or an individualized bond hearing before an immigration judge ("IJ"). (Ex Parte Appl. ("TRO") 1–2, Dkt. No. 4.). Singh also requests that the Court enjoin Respondents from transferring him outside of this District pending the Court's final adjudication of this matter. (*Id.* at 2.) Respondents failed to respond despite a court order. (*See* Dkt. No. 6.) For the reasons discussed below, the Court **GRANTS** Singh's TRO.

## II. BACKGROUND

On or around October 29, 2024, Singh entered the United States without inspection from Canada. (Pet. ¶ 23.) On or around February 7, 2025, Singh timely filed for asylum. (*Id.* ¶ 24.) After arriving, Singh settled in California, where he

began building a life while awaiting the adjudication of his asylum claim. (TRO 6.) He established meaningful ties to his community, formed friendships, and assisted his uncle with household responsibilities. (*Id.*)

On or about August 28, 2025, Singh visited a local Walmart when Immigration and Customs Enforcement ("ICE") officers approached him. (Pet. ¶ 25.) The officers requested documentation. (TRO 5.) After learning that Singh had recently entered the country and remained in pending proceedings, the ICE officers detained him. (*Id.*) ICE has held Singh in custody ever since at the Adelanto Detention Facility. (*Id.*) Singh has no criminal history. (*Id.*) He has no convictions of any kind, including any for crimes involving moral turpitude or offenses that would implicate the petty theft exception. (*Id.* at 6.)

Singh remains detained not because of any criminal conduct, but because Respondents recently adopted a new interpretation of the Immigration and Nationality Act ("INA"). (*Id.* at 5.) Relying on the Board of Immigration Appeals' unpublished decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), Respondents now apply 8 U.S.C. § 1225(b) to individuals like Singh, "regardless of where they were arrested or how long they have resided here." (*Id.* at 4–5.) Under this revised interpretation, Respondents considers all noncitizens who entered the United States without inspection, including Singh, subject to mandatory detention under 8 U.S.C. § 1225(b), rather than discretionary detention under 8 U.S.C. § 1226(a). (*Id.* at 3.) As a result, Singh continues to be detained without the opportunity to seek bond. (*Id.* at 6.)

Based on these allegations, on February 18, 2026, Singh filed a Petition for Writ of Habeas Corpus on the grounds that his detention is unlawful and violates his Fifth Amendment right to due process and his Eighth Amendment right to be free from excessive bail. (Pet. ¶¶ 68–75.) That same day, Singh filed this Motion for a Temporary Restraining Order. (TRO.) Singh seeks an order (1) requiring Respondents to release him or provide him with a bond hearing before an IJ, and

(2) enjoining Respondents from relocating him outside this District pending resolution of this case. (TRO 1–2.) On February 19, 2026, the Court ordered Respondents to respond no later than February 20, 2026, at 9:00 a.m. (Dkt. No. 6.) However, Respondents failed to respond or otherwise comply with the Court's order.

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

### IV. DISCUSSION

The Court briefly addresses its jurisdiction to review Singh's claims, before turning to the merits of the TRO.

**A. Jurisdiction**

The Court must first consider whether it has jurisdiction to grant the requested relief. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Under 8 U.S.C. section 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate

1  cases, or execute removal orders against any alien." The Supreme Court has
2  construed section 1252(g) to apply only to those three specified actions, stressing that
3  the statutory aim is to prevent "attempts to impose judicial constraints upon
4  prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*,
5  525 U.S. 471, 482, 485 n.9 (1999). However, a "district court may consider a purely
6  legal question that does not challenge the Attorney General's discretionary authority."
7  *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

8        Here, Singh raises a question of law as to whether his mandatory detention
9  during the pendency of his removal proceedings falls under § 1226(a) or § 1225(b)(2).
10 (TRO 8–14.) He does not challenge the Attorney General's discretionary authority to
11 commence, adjudicate, or execute removal proceedings. (*See generally id.*)
12 Moreover, the Court does not review or disturb Singh's underlying order of removal.
13 Instead, the Court confines its analysis to the narrow legal question properly before it:
14 whether Singh's detention entitles him to release or an individualized bond hearing.
15 As the Court addresses only the legality of Singh's detention—not the merits, validity,
16 or execution of his removal order—the Court has jurisdiction to review Singh's TRO.
17 *Hovsepian*, 359 F.3d at 1155.

18 **B.    Merits of the TRO: *Winter* Factors**
19       Singh demonstrates that the *Winter* factors weigh in favor of an injunction.
20       *1.     Likelihood of Success on the Merits*
21       Singh contends that § 1226(a), not § 1225(b)(2), governs his detention.
22 (TRO 8–14.)
23       The Court has considered this identical issue in nearly identical factual
24 circumstances and incorporates and adopts by reference its analyses in those recent
25 decisions. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672,
26 at *2–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-
27 ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Gonzalez v.*
28 *Noem*, No. 5:25-cv-02054-ODW (ADSx), 2025 WL 2633187, at *2–3 (C.D. Cal.

Aug. 13, 2025); *Saucedo v. Noem*, No. 2:25-cv-11051-ODW (RAOx) (C.D. Cal. Nov. 20, 2025); *Longoria v. Noem*, No. 5:25-cv-03098-ODW (DFMx), 2025 WL 3302780, at *3 (C.D. Cal. Nov. 25, 2025); *Singh v. Bowen*, No. 5:25-cv-03322-ODW (AGRx), 2025 WL 3552628, at *3 (C.D. Cal. Dec. 11, 2025.) For the reasons stated in those decisions, the Court finds again that the statutory text does not support the notion that § 1225 governs where, as here, an alien is present in the United States without admission. *See Gonzalez*, 2025 WL 2633187, at *4 ("If Respondents are correct that Congress meant for [section] 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under [section] 1226(c)(1)(E) unnecessary." (internal quotation marks omitted)). To the contrary, the plain text supports Singh's argument that § 1226(a) applies to his detention. (TRO 8–14); *see Arrazola-Gonzalez*, 2025 WL 2379285, at *2 ("[Section 1226] 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018))).

As in prior cases presenting these circumstances, the Court finds here that Singh shows a likelihood of success on the merits of his claim that § 1226(a), not § 1225, governs his detention.

*2. Likelihood of Irreparable Harm*

Singh contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained without a bond hearing. (TRO 14.)

Singh's continued detention deprives him of his liberty without access to a bond hearing and the procedural protections required by due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that "[f]reedom from imprisonment . . . lies at the heart of the liberty" that the Due Process Clause protects); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). The Court therefore finds that Singh's continued

detention without a bond hearing causes, and will continue to cause, immediate and irreparable harm.

        3.      *Balance of Equities and Public Interest*

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Singh argues that these factors favor relief because Respondents "cannot suffer harm from an injunction that merely ends an unlawful practice." (TRO 15–16 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).)

The Court agrees. As the Court has previously expressed, "to the extent that the BIA's adopted statutory interpretation deprives [Singh] of [his] constitutional rights and violates federal law, 'it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.'" *Gonzalez*, 2025 WL 2633187, at *6 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). Accordingly, the balance of equities and the public interest factors also favor injunctive relief.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (Dkt. No. 4.) It is hereby **ORDERED** that:

- Respondents shall release Singh or, in the alternative, provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Order;
- Respondents are **ENJOINED** from relocating Singh outside of the Central District of California pending final resolution of this action; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **February 27, 2026,** as to why the Court should not issue a preliminary injunction in this case. Singh may file a reply by

**March 3, 2026**.  The Court **SETS** a hearing on the preliminary injunction on **March 6, 2026, at 8:30 a.m.**, via Zoom.

**IT IS SO ORDERED.**

February 20, 2026

_____
         **OTIS D. WRIGHT, II**
    **UNITED STATES DISTRICT JUDGE**